REED ZARS
Wyo. Bar No. 6-3224
Attorney at Law
910 Kearney Street
Laramie, WY 82070
Phone: (307) 760-6268
Email: reed@zarslaw.com

KAMALA D. HARRIS
Attorney General of California
DAVID ZONANA (*pro hac vice pending*)
CA Bar No. 196029
Supervising Deputy Attorney General
MARY S. THARIN (*pro hac vice pending*)
CA Bar No. 293335
GEORGE TORGUN (*pro hac vice pending*)
CA Bar No. 222085
Deputy Attorneys General
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550
Telephone: (510) 879-1974
Facsimile: (510) 622-2270
E-mail: Mary.Tharin@doj.ca.gov

[*additional counsel listed on signature page*]

*Attorneys for Applicants for Intervention*

**UNITES STATES DISTRICT COURT**
**DISTRICT OF WYOMING**

| | |
|---|---|
| STATE OF WYOMING et al.,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,<br><br>Respondents | Case No. 16-cv-00285-SWS [Lead]<br><br>[Consolidated With 2:16-cv-00280-SWS]<br><br>Assigned: Hon. Scott W. Skavdahl<br><br>**MEMORANDUM IN SUPPORT OF INTERVENOR-APPLICANTS CALIFORNIA AND NEW MEXICO'S MOTION TO INTERVENE AS RESPONDENTS** |

**INTRODUCTION**

The Bureau of Land Management ("BLM") recently promulgated the Waste Prevention, Production Subject to Royalties, and Resource Conservation Rule ("Waste Prevention Rule" or "Rule") in an effort to update 30-year-old regulations governing the release of natural gas from oil and gas operations on federal and Indian lands. 81 Fed. Reg. 83,008 (Nov. 18, 2016). The Rule would significantly reduce the wasteful leakage of gas from federally-administered oil and gas leases through the application of new standards on venting and flaring and the assessment of royalties on much of the gas that operators let escape unnecessarily. According to the BLM, nearly 100,000 oil and gas wells on federal land released approximately 462 billion cubic feet (Bcf) of natural gas over a six-year period between 2009 and 2015 through venting and flaring, which is enough gas to power over 6.2 million homes for one year. *Id*. at 83,009. The BLM estimates that the Rule could have net benefits of up to $204 million per year. *Id.* at 83,013.

Implementation of the Rule will benefit the States of California and New Mexico by generating more annual royalty revenue compared to that generated under current regulations, which allow considerable amounts of natural resources to be wasted royalty-free. *Id.* at 83,014, 83,069. In addition, the Rule will benefit the health of the states' citizens who are exposed to harmful air contaminants leaked, vented and flared from federally-managed oil and gas operations. *Id.* at 83,014-15. Further, because wasted natural gas is comprised largely of methane—a powerful greenhouse gas—the Rule will help to reduce the significant climate impacts of oil and gas operations on federal and Indian lands. *Id.* at 83,009. The People of California and New Mexico have a strong interest in preventing the waste of public resources, as well as in reducing the emission of harmful air pollutants that threaten the health of the states'

citizens, the integrity of their infrastructure, protection of their unique environments and ecosystems, and the continued viability of their economies.

Petitioners Western Energy Alliance, Independent Petroleum Association of America, and the States of Wyoming, Montana and North Dakota (collectively, "Petitioners") seek to invalidate the Waste Prevention Rule. The States of California (by and through the California Air Resources Board) and New Mexico (collectively, "Supporting State Intervenors") seek intervention to defend the Rule in order to protect their sovereign interests in recovering royalties for their natural resources, to protect their citizens' health and welfare, and to slow the rate of global climate change. Respondents, Department of the Interior et al., have represented that they take no position on Supporting State Intervenors' Motion to Intervene, and Petitioner States of Wyoming, Montana and North Dakota have represented that they do not oppose Supporting State Intervenors' Motion, with the understanding that such intervention will not change the briefing schedule for the preliminary injunction motion. (See Declaration of Mary Tharin in Support of Supporting State Intervenors' Motion to Intervene, at ¶¶ 3-4.) Also, Citizen Group Intervenors consented to intervention. (*Id*. at ¶ 5.) Western Energy Alliance and Independent Petroleum Association of America oppose the intervention Motion. (*Id*. at ¶ 6.)

## ARGUMENT

I. **SUPPORTING STATE INTERVENORS ARE ENTITLED TO INTERVENE AS OF RIGHT.**

Under Federal Rule of Civil Procedure 24(a), a movant seeking to intervene as of right must show: (1) the motion is "timely"; (2) the movant "claims an interest relating to the property or transaction that is the subject of the action"; (3) "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest"; and (4) existing parties to the action do not "adequately represent" that interest. Fed. R. Civ. P. 24(a)(2); Local Rule

83.6(e). The Tenth Circuit has stated that its tendency is to "follow a somewhat liberal line in allowing intervention." *Nat'l Farm Lines v. I.C.C.,* 564 F.2d 381, 384 (10th Cir. 1977). Supporting State Intervenors satisfy each of Rule 24(a)'s requirements and are therefore entitled to intervene in this action as of right.

### A. The Motion to Intervene is Timely.

The timeliness of a motion to intervene is assessed "in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." *Sanguine, Ltd. v. United States Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984) (citations omitted). The Rule at issue was published in the Federal Register on November 18, 2016, less than one month ago. Between November 15 and November 23, 2016, five petitioners filed three separate actions, which the Court consolidated on November 30, 2016. In addition, the Court set a briefing schedule for preliminary injunction motions, which calls for the BLM to file its opposition brief on December 15, 2016. This litigation is in its very early stages—a hearing on the motions for preliminary injunction has been calendared for January 6, 2017, but no trial date has been set.

Upon learning of the action, Supporting State Intervenors acted promptly to review the pleadings, conduct their own analysis, obtain approvals, and retain local counsel. As a result, Supporting State Intervenors are able to file this motion and to submit their opposition to the motion for preliminary injunction (with a motion for leave to file the opposition) by the Court's deadline. Thus, intervention should not interfere with any schedule set by the Court, nor will it unduly delay or prejudice the rights of any other party. This motion is therefore timely.

### B. Supporting State Intervenors Have a Compelling Interest in the Subject Matter of this Litigation.

To intervene as of right under Rule 24(a), the movant must demonstrate "an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a). The Tenth Circuit has declared it "'indisputable' that a prospective intervener's environmental concern is a legally protectable interest." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010).

In California, the BLM administers 15.2 million acres of public lands, covering nearly 15% of the state's land area.[1] In New Mexico, the BLM oversees over 13 million acres of public lands, 36 million acres of federal mineral estate, and approximately 8 million acres of Indian trust minerals.[2] The Rule will result in increased revenue to the Supporting State Intervenors in the form of oil and gas royalty disbursements. The BLM estimates that the federal government will collect an additional $14 million in royalties annually, half of which will be allocated to states. 81 Fed. Reg. at 83,014; 30 U.S.C. § 191(a). California is one of the highest-producing states in terms of oil extraction on public land.[3] (See Declaration of Elizabeth Scheehle in Support of State Intervenor's Motion to Intervene, at ¶ 4.) Each year, millions of dollars of royalties assessed from oil and gas development on California's federally-administered leases are

---

[1] BLM, "BLM California" (last accessed Dec. 9, 2016), *available at*: https://www.blm.gov/california.
[2] BLM, "Mineral and Surface Acreage Managed by the BLM," (last accessed Dec 15, 2016), *available at:* https://www.blm.gov/wo/st/en/info/About_BLM/subsurface.html. Note that the BLM's administrative structure does not precisely track state lines with respect to oversight of Indian trust minerals.
[3] BLM, "California Oil and Gas," (last accessed Dec 9, 2016), *available at*: https://www.blm.gov/programs/energy-and-minerals/oil-and-gas/about/california.

allocated to the state.[4] (*Ibid.*)  Thus, California has a clear monetary stake in the BLM's efforts to charge royalties on all avoidable waste of natural resources within the state's borders.

Similarly, New Mexico is the second highest producer among the states of gas on public lands, and the highest producer of crude oil.[5]  New Mexico has the third highest volume of oil-well gas flared among all states.[6]  One study estimates that New Mexico lost between $5.28 million and $6.29 million in royalties from venting and flaring in 2015, and between $39.16 million to $46.62 million between 2010 and 2015.[7]  This figure does not include lost royalties from leaks.  New Mexico, whose per-pupil spending is below the national average,[8] uses its federal mineral leasing royalty payments for educational purposes.  NMSA 1978, § 22-8-34(A).  Maximizing royalty recovery in New Mexico therefore serves vital societal interests.

Further, Supporting State Intervenors have a compelling interest in the efficient development of federal energy resources within their borders and in protecting the cultural, historical, archaeological, environmental, and recreational resources that may be impacted by such development.  Many residents are impacted by venting, flaring and leakage of gas connected with BLM lands.  (See Declaration of Elizabeth Scheehle in Support of Supporting State Intervenors' Motion to Intervene, at ¶ 5.)  The Rule would reduce the harmful impacts of

---

[4] Office of Natural Resources Revenue, "Statistical Information" (last accessed Dec 9, 2016), *available at*: https://statistics.onrr.gov/ReportTool.aspx.
[5] BLM, Regulatory Impact Analysis, Revisions to 43 CFR 3100 and 43 CFR 3600 and Additions to 43 CFR 3178 and 43 CFR 3179 (RIA), at 176, App. A-2 (Jan. 14, 2016) (using 2013 data).
[6] RIA at 202 Table 4 (using 2013 data).
[7] Western Values Project, *Cutting natural gas waste is good for New Mexico's state budget*, at 3 (Mar. 14, 2016). The study predicts between $4.69 million and $5.58 million will be lost in 2016.
[8] United States Census, *Public Education Finance: 2013*, at 8, Table 8 (June 2015) (for most recent census data, 2013, national average is $10,700 per pupil, and New Mexico spends $9,012).

these activities by limiting air pollutants that are associated with respiratory and cardiovascular illnesses.  81 Fed. Reg. at 83015.

In addition, Supporting State Intervenors have a strong interest in preventing and mitigating harms that climate change poses to human health and the environment, including increased heat-related deaths, damaged coastal areas, disrupted ecosystems, more severe weather events, and longer and more frequent droughts.  *See Massachusetts v. EPA*, 549 U.S. 497, 521 (2007).  Supporting State Intervenors have a compelling interest in defending the Rule as a means to achieve their goal of preventing and mitigating climate change harms in their states.  California has committed to reducing greenhouse gas emissions, including through the development of methane-curbing oil and gas regulations.[9]  (See Declaration of Elizabeth Scheehle in Support of Supporting State Intervenors' Motion to Intervene, at ¶ 9.)  By imposing comparable regulations on a national level, the Rule would promote a level playing field for the development of oil and gas resources on California's and New Mexico's federally-administered lands.  (*Ibid.*)  In addition, because the Rule has the co-benefit of furthering the Supporting State Intervenors' goals and efforts to mitigate harmful greenhouse gas pollution, and would do so on a nationwide basis, Supporting State Intervenors have a strong interest in defending it.

    **C.**    **Supporting State Intervenors' Interests May Be Impaired as a Result of this Litigation.**

Rule 24(a) also requires Supporting State Intervenors to show that the litigation "may, as a practical matter, impair or impede [their] interest."  Fed. R. Civ. P. 24(a)(2); *Nat'l Park Serv.*, 604 F.3d at 1198.  To satisfy this requirement, Supporting State Intervenors "must show only

---

[9] *See* California Air Resources Board, "Notice of Public Hearing to Consider the Proposed Regulation for Greenhouse Gas Emission Standards for Crude Oil and Natural Gas Facilities" (Last reviewed July 25, 2016), *available at:* https://www.arb.ca.gov/regact/2016/oilandgas2016/oilandgas2016.htm.

that impairment of [their] substantial legal interest is possible if intervention is denied," a burden the Tenth Circuit has described as "minimal." *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1253 (10th Cir. 2001).

If the Petitioners succeed in this case, the Rule's benefits to Supporting State Intervenors will be lost. If the Rule is enjoined or set aside, the result will be the unabated waste of valuable public resources and associated negative fiscal, environmental, and health impacts. Therefore, the outcome of this litigation could seriously impede the aforementioned interests of Supporting State Intervenors.

**D.  Supporting State Intervenors' Interests Are Not Adequately Represented.**

Rule 24(a) further requires a showing that the Supporting State Intervenors' interests may not be adequately represented by existing parties. Fed. R. Civ. P. 24(a)(2); *Nat'l Park Serv.*, 604 F.3d at 1198. To meet this "minimal burden," the movant need only show "the possibility that representation may be inadequate." *Nat'l Park Serv.*, 604 F.3d at 1200.

The objectives of Supporting State Intervenors are not identical to those of any existing party to this action. Though the BLM is mandated to balance public interest considerations as part of its decision-making process, the agency's conclusions will not necessarily align with the interests of Supporting State Intervenors as representatives of the interests of their citizens. For example, Supporting State Intervenors have unique sovereign interests in limiting climate change pollution in order to prevent loss and damage to publicly owned coastal property, to protect public infrastructure, and to limit emergency response costs borne by the public. *See Massachusetts v. EPA*, 549 U.S. at 521-23. Further, the interests of Supporting State Intervenors and the federal government are distinct. It is reasonably possible that the BLM may take a position later in this litigation that diverges from or is adverse to Supporting State Intervenors'

interests, making this a situation where the federal government, with "multiple interests to pursue, [may] not adequately pursue the particular interest" of the Supporting State Intervenors. *San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1203–04 (10th Cir. 2007); *see also Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1107 (9th Cir. 2002) (observing that the George W. Bush administration ceased defending challenges to the Roadless Rule finalized during the Clinton administration). Thus, there is a distinct possibility that representation of Supporting State Intervenors' interests by any other party to this litigation will be inadequate, and intervention should be granted.

   E.   **Supporting State Intervenors Have Article III Standing to Participate in this Action.**

Supporting State Intervenors have standing to participate in this action under Article III of the U.S. Constitution, which requires a litigant to demonstrate that it has "suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury." *Massachusetts v. E.P.A.*, 549 U.S. at 517. The Supreme Court has acknowledged that for purposes of invoking jurisdiction, states are "not normal litigants," but rather act subject to a "well-founded desire to preserve [their] sovereign territory…" *Id*. at 518-19. As aforementioned, Supporting State Intervenors seek to intervene in order to collect royalties on the extraction of their natural resources, protect the health of their citizens, and preserve their sovereign territories from the harmful effects of climate change. Therefore, Supporting State Intervenors' "stake in the outcome of this case is sufficiently concrete" for this Court to confer standing. *Id*. at 519.

## II. ALTERNATIVELY, THIS COURT SHOULD GRANT SUPPORTING STATE INTERVENORS PERMISSIVE INTERVENTION.

In the alternative, this Court should grant Supporting State Intervenors permissive intervention under Rule 24(b), which allows intervention where the movant timely files, and where the movant's claim and the main action have a question of law or fact in common. Fed. R. Civ. P. 24(b). As discussed in Part I.A, supra, this motion is timely filed. Because the litigation is in its very early stages, and Supporting State Intervenors agree to adhere to all litigation deadlines that have been set thus far, intervention would not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Further, Supporting State Intervenors' claims overlap with the main action in a key question of law: namely whether the Waste Prevention Rule is a valid exercise of the BLM's statutory authority. To address this question, Supporting State Intervenors will present evidence and legal arguments related specifically to their sovereign interests. Therefore, Supporting State Intervenors satisfy the requirements for permissive intervention under Rule 24(b).

Dated: December 15, 2016                    Respectfully Submitted,

/s/ Reed Zars
Reed Zars
Wyo. Bar No. 6-3224
Attorney at Law
910 Kearney Street
Laramie, WY 82070
Phone: (307) 760-6268
Email: reed@zarslaw.com

*Attorney for Applicants for Intervention*

KAMALA D. HARRIS
Attorney General of California
DAVID A. ZONANA (*pro hac vice pending*)
CA Bar No. 196029
Supervising Deputy Attorney General
MARY S. THARIN (*pro hac vice pending*)
CA Bar No. 293335
GEORGE TORGUN (*pro hac vice pending*)
CA Bar No. 222085
Deputy Attorneys General
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550
Telephone: (510) 879-1974
Facsimile: (510) 622-2270
E-mail: Mary.Tharin@doj.ca.gov

*Attorneys for the State of California, by and through the California Air Resources Board*

HECTOR BALDERAS
Attorney General of New Mexico
William Grantham *(pro hac vice pending)*
NM Bar No. 15585
Assistant Attorney General
Post Office Drawer 1508
Santa Fe, New Mexico 87504-1508
Telephone: (505) 827-6000
Direct: (505) 717-3520
Facsimile: (505) 827-5826
Email: wgrantham@nmag.gov

*Attorneys for the State of New Mexico*