# EXHIBIT 3

Eric P. Waeckerlin – *Pro Hac Vice*
Kathleen Schroder – *Pro Hac Vice*
Erin K. Murphy – Wyo. Bar No. 7-4691
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, Colorado 80202
Tel:   303.892.9400
Fax:   303.893.1379
Eric.Waeckerlin@dgslaw.com
Katie.Schroder@dgslaw.com
Erin.Murphy@dgslaw.com

*Attorneys for Petitioners Western Energy Alliance and Independent Petroleum Association of America*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| STATE OF WYOMING, et al., ) <br> ) <br> Petitioners, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES DEPARTMENT OF THE ) <br> INTERIOR, et al. ) <br> ) <br> Respondents. ) <br> ) <br> ) <br> ) | Civil Case No. 2:16-cv-00285-SWS [Lead] <br><br> Consolidated with: <br><br> Case No. 2:16-cv-00280-SWS <br><br> Assigned: Hon. Scott W. Skavdahl |

### DECLARATION OF CLAYTON MILLER

I, Clayton Miller, do certify under penalty of perjury as follows:

1.   I am the President and Chief Operating Officer (COO) for NP Resources, LLC and North Plains Energy II, LLC, each Delaware limited liability companies (collectively referred to as "NPR/NPE-II").

2.   NPR/NPE-II's offices are located at 1600 Broadway, Suite 2450, Denver, CO 80202. I can be contacted at 303.800.5075 or clayton.miller@np-es.com.

- 1 -

3. I am over the age of twenty one, and I have personal knowledge of the facts set forth herein. I would and could testify to these facts if called upon to do so in a court of law. My statements made in this declaration are made on behalf of NPR/NPE-II in my capacity as President and COO.

4. NPR/NPE-II is a member of the Western Energy Alliance.

5. NPR/NPE-II owns and operates approximately 60 oil and natural gas production facilities in North Dakota, producing from the Bakken pool in Divide, Billings, Golden Valley, and McKenzie counties (North Dakota facilities).

6. NPR/NPE-II has 12 employees.

7. NPR/NPE-II's North Dakota facilities and operations will be impacted by the Bureau of Land Management's (BLM) final rule entitled "Waste Prevention, Production Subject to Royalties, and Resource Conservation," published at 81 Fed. Reg. 83,008 (Nov. 18, 2016), with corrections published at 81 Fed. Reg. 88,634 (Dec. 8, 2016) ("the Rule"). Specifically, NPR/NPE-II's North Dakota Facilities are located and operate on federal, state, and private surface leases, and produce federal, state, and fee mineral resources.

8. Several of our facilities in Divide County are located on private or state surface leases for which NPR/NPE-II has signed communatization agreements. The wellbores do not penetrate federal minerals, and less than 5 percent of the minerals they produce are from federal leases. Nonetheless, these facilities will be subject to the full suite of regulatory requirements and enforcement potential under the Rule.

## GAS VOLUME MEASUREMENT AND ROYALTIES

9. Among other things, the location and production of NPR/NPE-II's North Dakota facilities require NPR/NPE-II to measure, estimate, calculate, and pay royalties under NTL-4A on avoidably lost royalty-bearing gas to the Office of Natural Resources Revenue (ONRR). NPR/NPE-

II has existing systems in place, including coded software, to help ensure accuracy of these royalty payments.

10. If the Rule takes effect, the royalty provisions will cause immediate and irreparable harm to NPR/NPE-II starting January 17, 2017. Specifically, sections 3179.4 and 3179.5 will require payment of royalties on all gas defined by the Rule as "unavoidably lost" once the Rule becomes effective. Among other things, this will require NPR/NPE-II to immediately install new measuring devices and devise a new system to estimate gas under section 3179.9.

11. Because NPR/NPE-II is a small company, immediate compliance costs associated with the royalty, measuring, and estimating provisions of section 3179 are significant. In conjunction with other immediate costs imposed by the Rule, compliance with the Rule will cause cash flow losses on a significant portion of our wells and likely require us to shut-in a portion of them.

12. Because NPR/NPE-II is a small company, the software and other coding adjustments required to accurately measure or estimate, and report flared and vented gas volumes, and accurately account for royalty payments will constitute a significant and immediate compliance expense. We estimate that it could take up to six months to get software and other systems in place to comply with the measuring and royalty provisions under the Rule. Therefore, NPR/NPE-II will need to begin devoting resources to this effort immediately, including monetary expenditures and employee time. NPR/NPE-II is at risk of paying inaccurate royalties during this six month period, including royalty overpayment. Because of our small size and the time it takes to demonstrate and recoup overpaid royalties, this represents a potentially substantial negative opportunity cost and would prevent us from investing our limited capital elsewhere.

13. NPR/NPE-II will also be subject to interest for unpaid royalties. NPR/NPE-II may be subject to applicable penalties for incorrectly paid royalties, regardless of whether NPR/NPE-II over- or under-pays. For example, the Rule requires the payment of royalties for avoidably lost gas as well

as any excess flared gas as defined in section 3179.7. *See* 3179.4(2). Accordingly, it is possible that the Rule will require NPR/NPE-II to make royalty payments twice for the same volume of gas.

14. The measurement, estimation, and royalty provisions of the Rule constitute a substantial departure from BLM's current practice under NTL-4A. NTL-4A provides flexibility on a case-by-case basis based on the specific economic conditions of the lease for both operators and the agency to determine when lost gas is avoidable or unavoidable and therefore royalty-bearing. For example, NPR/NPE-II cannot determine how it would be possible to delineate gas volumes flared as a result of downstream pipeline maintenance by a midstream gatherer into that which is avoidable versus unavoidably lost gas. Among other things, such assessment would require detailed data, planning, and operational information from midstream gathering companies to know what is and is not scheduled maintenance. Much of this information is confidential or proprietary or cannot be obtained, particularly by a small company like NPR/NPE-II. Accordingly, it will be difficult and often not possible for NPR/NPE-II to foresee many scheduled pipeline maintenance events.

15. Similarly, estimating volumes of vented gas and determining whether such events constitute "avoidably lost gas" for which royalties are owed will require NPR/NPE-II to devote substantial internal resources including engineering and accounting expertise. Among other things, it will require NPR/NPE-II to determine whether any venting event is royalty bearing, which will require, for example, determination of compliance with 3179.301-305's LDAR program, *see* 3179.6(b)(6), or whether venting occurred because flaring was technically infeasible, *see* 3179.6(b)(1). These determinations are highly technical and fact specific, and in order to minimize enforcement risk, will require a substantial amount of internal NPR/NPE-II resources and likely a detailed demonstration and justification to BLM, ONRR, or both.

16. BLM has not issued any instructional memorandum or other guidance to help operators comply with the measurement and royalty provisions under 3179, and it is my opinion that

- 4 -

BLM and ONRR are not prepared and will not be prepared to process reporting or royalty payments on production under the Rule's structure if the Rule takes effect on January 17, 2017. Accordingly, NPR/NPE-II believes that underpayment or overpayment of royalties will occur until such time as both operators and BLM/ONRR are adequately equipped to comply with the new program.

**MARGINALLY ECONOMIC WELLS**

17. Of our 60 operating facilities, 17 of them are considered marginally economic, meaning their production rate is at or below 10 barrels of oil per day, which, when accounting for current natural gas and oil prices and lease operating expenses, equates to a cash flow per well of approximately $770/month or less.

18. Costs exceeding this cash flow on a per month basis will render these 17 wells uneconomic, likely resulting in a decision to shut in. I expect the costs of this Rule, which include additional staffing and resources devoted to measuring and estimating lost gas volumes to significantly exceed $770/month on a per-well basis.

19. For a company of NPR/NPE-II's size, compliance with the Rule would cause 17 of our wells to become non-economic and shut in, representing nearly 28 percent of our operating facilities. Moreover, compliance would substantially impact our ability to operate and pursue future plans and would result in workforce reductions.

20. In addition, there are numerous other costs and impacts associated with shutting-in marginally economic wells, including approximately $150,000 in costs associated with plugging and abandonment, and the potential loss of leasehold rights, including the ability to drill offset wells or otherwise develop on such leaseholds in the future.

21. Because of the prohibitive cost of, and serious safety concerns with, the alternative mobile capture technologies identified by BLM (LNG stripping, CNG, gas-to-power technologies) under the Rule, the only viable means of meeting flaring requirements and minimizing avoidably

lost gas is to install permanent redundant systems. Among other things, this would either require an operator to be on-site 24 hours a day, 7 days a week to oversee the alternative capture technology, or each well would need to have automatic shut-in capacity or back-up combustors or flares. None of these options is cost-effective or practical for NPR/NPE-II.

22. In addition, shutting-in operating wells reduces the productivity of the wells over time and requires tremendous NPR/NPE-II resources given the remote locations of our facilities.

**RECORDKEEPING, REPORTING, AND WASTE MINIMIZATION PLANS**

23. The recordkeeping and reporting requirements under 3179.305 will require NPR/NPE-II to maintain, compile, and submit records in addition to recordkeeping and reporting requirements under existing Environmental Protection Agency (EPA) and state inspection programs. Compliance with the March 31 annual reporting requirement, in particular, will constitute a significant burden and expense for NPR/NPE-II given our limited staff.

24. I estimate that the monitoring, measuring, accounting, and reporting functions will require an additional 2.0 man-years of employment. This additional manpower impacts more than one job position and could require more than two additional employees in the organization.

25. NPR/NPE-II will be subject to separate enforcement risk under the Rule, including fines and penalties for any non-compliance with the Rule's recordkeeping and reporting requirements. This is in addition to the enforcement risk, fines, and penalties potentially applicable to NPR/NPE-II under EPA regulations.

26. In addition, in submitting waste minimization plans to BLM, the Rule requires operators to disclose commercially sensitive information about anticipated production from a proposed well, such as expected oil and gas production rates from the well, the expected production decline curve of oil and gas from the well, and the expected BTU value for gas production from the proposed well. These projections and data are highly confidential and of

great value; operators, including NPR/NPE-II, go to great lengths to protect this information from outside disclosure or unnecessary internal dissemination, distributing such information only to those employees that need to know.

**FUTURE DRILLING**

27.     NPR/NPE-II has already committed resources to future drilling plans in areas that will produce federal minerals or involve federal leases. NPR/NPE-II typically puts drilling schedules in place 9 months to 1 year in advance of actual drilling to allow time for Application for Permit to Drill (APD) processing and to meet the terms and obligations under its oil and gas leases.

28.     Lack of sufficient resources at BLM and new provisions of the Rule are likely to create additional delays in APD processing not currently built into NPR/NPE-II's drilling schedule. In addition to the potential for APD delay or disapproval associated with BLM's review of Waste Minimization Plans under section 3162.3-1, delays are likely pending BLM's new pipeline capacity review under section 3179.11. In addition, BLM-imposed limits on production or other terms and conditions issued with NPR/NPE-II's APDs under section 3179.11 could impact or prevent NPR/NPE-II's ability to meet future production targets or otherwise conform to scheduled drilling plans.

29.     If NPR/NPE-II were not able to fulfill these drilling plans due to a lack of infrastructure, lack of pipeline capacity, inability to secure midstream contractual services, inability to comply with the Rule's gas capture or other provisions, or because of delays in APD processing or terms and conditions within the APDs that require NPR/NPE-II to limit production, NPR/NPE-II would suffer harm in the form of lost revenue from federal production and potentially the loss of merchantable oil and gas leases.

30.     I estimate the potential harms referenced in this declaration will begin accruing to

- 8 -

NPR/NPE-II on January 17, 2017.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and was executed in Denver, Colorado on this 21 day of December, 2016.

Clayton Miller